**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

SHANEA DANIEL,

      Plaintiff

                v.

Warner Bros. Discovery, Inc.

      &amp;

WARNERMEDIA DIRECT, LLC

      &amp;

WARNERMEDIA SERVICES, LLC

      &amp;

Home Box Office, Inc.

      &amp;

HBO SERVICE CORPORATION

      &amp;

Time Warner, Inc.

      &amp;

WARNER COMMUNICATIONS, INC.

      &amp;

AT&T, Inc.

      Defendants

Civil Action No. _____

Jury Trial Demanded Pursuant to F.R.C.P. 38(b)

**COMPLAINT**

Shanea Daniel, Plaintiff, by and through the undersigned counsel, files this Complaint pursuant to Federal Rule of Civil Procedure 7(a).  In support, she states and represents the following:

### Jurisdiction

1.      This Honorable Court's jurisdiction over this Complaint is valid under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different States.

### Venue

2.      Venue is proper in this forum because the Plaintiff is a citizen and resident of the State of Maryland.

### Plaintiff

3.      Plaintiff, Ms. Shanea Daniel, is an adult resident and citizen of Baltimore City, Maryland.  Ms. Daniel identifies as a Black American.  Ms. Daniel is also a little person, i.e. a person diagnosed with dwarfism.

4.      Ms. Daniel is also an exotic dancer.  She is one of only two known exotic dancers diagnosed with dwarfism who performed in the greater Baltimore area from 2015 to 2017.

### Defendants

5.      The named Defendants are corporations and other businesses commonly known in the collective as "HBO," or parent companies with direction and control over HBO's operations and programming.

6.      Warner Bros. Discovery, Inc., is incorporated in Delaware and headquartered in New York.

7.      WARNERMEDIA DIRECT, LLC, is organized in Delaware and headquartered in New York.

8.      WARNERMEDIA SERVICES, LLC, is organized in Delaware.  It has significant operations in New York and California.

9.      Home Box Office, Inc., is incorporated in Delaware and headquartered in New York.

10.     HBO SERVICE CORPORATION is incorporated in Delaware and headquartered in New York.

11.     Time Warner, Inc., is incorporated in Delaware and headquartered in New York.

12.     WARNER COMMUNICATIONS, INC., is incorporated in Delaware and headquartered in New York.

13.     AT&T, Inc., is incorporated in Delaware and headquartered in Texas.

## The Actionable Conduct

14.     Ms. Daniel is a documented victim of Sgt. Wayne Jenkins, the ringleader of the corrupt Baltimore Gun Trace Task Force consisting of several Baltimore Police Department Officers who conspired to commit numerous public integrity crimes from approximately 2015 to 2017.

15.     The crimes that Sgt. Jenkins perpetrated against Ms. Daniel were memorialized in the June 22, 2017, Superseding Indictment filed against Jenkins and six other officers in U.S. v. Gondo, et al, 17-CR-00106-JKB (U.S. District of Maryland 2017).  According to the Superseding Indictment, Jenkins and several other officers robbed a pair of drug dealers of approximately $20,000-$25,000 at the Belvedere Towers apartments in Baltimore City.  Jenkins and the other officers then divided the stolen cash and drove to a strip club in Baltimore County.  "At the strip club, Jenkins robbed a stripper.  Jenkins fled the strip club with Taylor and M.W. after robbing the

stripper." Id., ¶ 18. Indeed, the stripper mentioned in the Superseding Indictment was Shanea Daniel, who had been working at the Millstream Inn Gentlemen's Club in the spring of 2015.

16. Sgt. Wayne Jenkins and six other Baltimore Police officers were eventually convicted of RICO Conspiracy and other charges and sentenced to as little as 84 months of imprisonment to as much as 240 months of imprisonment. As the ringleader, Jenkins received the highest sentence of 240 months.

17. In 2021, Random House, a division of Penguin Random House LLC, New York, published the book, "We Own This City," by Justin Fenton. Fenton is also an investigative journalist for The Baltimore Sun. The book outlined many of the exploits of Sgt. Wayne Jenkins and the Baltimore Gun Trace Task Force. Notably, Fenton's book did not mention Jenkins robbing Shanea Daniel or any other exotic dancer.

18. On April 25, 2022, Defendants released a television miniseries, "We Own this City," (hereinafter the "Show"), based on the book by Justin Fenton. However, Defendants added content to the Show that was not covered in the book, including Jenkins's robbery of Shanea Daniel.

19. However, Defendants embellished Jenkins' interactions with Shanea Daniel in a false and objectively humiliating and offensive way by implying that Ms. Daniel was a prostitute who used her exotic dancing as a front to sell sexual services.

20. In the Show, Defendants wrote and portrayed the following scene about Ms. Daniel:

a. In Episode 4 (the "Episode") of the Show, there was an approximately three-minute scene in which the character based on Jenkins was in a strip club with friends and fellow officers.

b.      In the Episode, Sgt. Jenkins's character focused his attention on a Black-American, little-person exotic dancer.

c.      Jenkins's character demands that another dancer summon Ms. Daniel's character "to the VIP" (the "VIP").

d.      Shortly thereafter, Jenkin's character declares to his friends: "*Let me tell you something – I'm going to fuck her.  I swear to God.  Yes, I am.  Watch this: I swear – dead ass, I'm gonna fuck her.  Watch me.*"  Thereafter, Ms. Daniel's character takes Jenkins's character into the supposed VIP. Moments later, Jenkins's character bursts out of the VIP and yells to his friends: "*We gotta bounce.*"

e.      In the next scene, the characters are in a car driving away from the strip club.  As they are driving away, Jenkins's character tells his friends:

> *Mini-me . . . was on top of me for like five seconds and I couldn't fit inside of her. So, I knew that shit wasn't going to happen, so I just dumped the runt on the ground . . . I grabbed her fucking money, and I bailed the fuck out.  That's what happened. Check this shit out."*

Jenkins's character then shows his friends some cash.  One of the other characters in the car states: "*You robbed a midget stripper*?!"

21.    The scene from Episode 4 is clearly a portrayal of Sgt. Jenkins's real-life interactions with Shanea Daniel, as memorialized in the eventual indictment of Sgt. Jenkins and his coconspirators.  However, Defendants embellished the portrayal by implying that Ms. Daniel was engaged in prostitution when Sgt. Jenkins robbed her.  In embellishing the scene, Defendants purposefully sought to increase the entertainment value of the Show and therefore profit at the expense of Ms. Daniel's reputation.

22.    Ms. Daniel never had any form of sexual contact with Sgt. Jenkins, consensually or otherwise.

23.     Episode 4 clearly depicts Shanea Daniel.  There is no other person who possesses the identifying characteristics of the corresponding character in the Show.  Shanea Daniel is literally the only Black-American, little-person, exotic dancer who performed in the greater Baltimore area in or around 2015, who was also robbed by the notorious Sgt. Jenkins.

24.     The Show's false depiction of Shanea Daniel's actions, and the implication of sexual contact between Ms. Daniel and Sgt. Jenkins, has caused significant damage to Ms. Daniel's personal reputation.

25.     The Show's false depiction of Shanea Daniel's actions, and the implication of sexual contact between Ms. Daniel and Sgt. Jenkins has caused significant damage to the goodwill and reputation of Ms. Daniel's business.

26.     The false impression that Ms. Daniel engaged in sexual relations with a customer on the job – or worse: that she used exotic dancing as a gateway to prostitution – has made it more difficult for Shanea Daniel to book performances.

27.     Ms. Daniel has suffered embarrassment and other emotional distress from her efforts to correct the record with her friends and family, who now have cause to believe that she was engaged in prostitution, rather than merely legal adult entertainment.

## COUNT 1
### Defamation
### (All Defendants, Jointly and Severally)

28.     Paragraphs 1-27 are hereby incorporated into this Count as if restated here.

29.     In writing, directing, and producing the Show to depict real criminal acts of the Baltimore Gun Trace Task Force and a real interaction between Sgt. Wayne Jenkins and Plaintiff, Defendants knew, or should have known, that a reasonable viewer would believe the portrayal of those events to be a factual and accurate representation of the actions of the real people upon whom the characters were based.

30.     In writing, directing, and producing the Show to imply that Plaintiff engaged in prostitution with Sgt. Wayne Jenkins, Defendants knew, or should have known, that a reasonable viewer would believe that Plaintiff had engaged in Prostitution with Sgt. Wayne Jenkins.

31.     In fact, Plaintiff did give a lap dance to Sgt. Wanye Jenkins in or around the Spring of 2015.  It is also a fact that Sgt. Wayne Jenkins robbed Plaintiff during the performance, as accurately portrayed in the show.

32.     However, Plaintiff did not engage in prostitution with Sgt. Wayne Jenkins at any point in time.

33.     In making the defamatory communication, Defendant's negligently portrayed Ms. Daniel in this false and defaming light.

34.     Defendants writing, directing, and producing the Show in such a way that the Show's dialog and depictions implied that Plaintiff engaged in prostitution with Sgt. Wayne Jenkins constituted a false statement.

35.     Defendants published the false statement to a worldwide audience by releasing the Show on the HBO cable Network and HBO-controlled online streaming services.

36.     The false statement was harmful to Plaintiff's character and reputation.

37.     The false statement has caused the Plaintiff serious financial harm by diminishing her ability to apply her trade and other job prospects.

38.     The false statement has also caused the Plaintiff serious emotional distress in the form of embarrassment, aggravation, and strained interpersonal relationships.

39.     At all times relevant to this Complaint, Defendant's agents knew, or should have known, that the intentional representation of Plaintiff engaging in prostitution with Sgt. Wayne Jenkins was untrue

40.     At all times relevant to this Complaint, Defendant's agents knew, or should have known, that writing characters based on real people would expose the real people upon whom the characters were based to public obloquy if they portrayed the characters in a negative light.  In depicting and describing the actions of characters based on real people in a way that was a false and negative representation of the real people's actions and character, Defendants acted intentionally, maliciously, knowingly, willfully, and with reckless disregard for the truth.

41.     Prior to Defendants' false depictions of Plaintiff's actions, Plaintiff enjoyed a good reputation for professionalism within her chosen field of entertainment, honesty, and law-abiding work.

<u>**COUNT 2**</u>
**False Light**
**(All Defendants, Jointly and Severally)**

42.     Paragraphs 1-41 are hereby incorporated into this Count as if restated here.

43.     In writing, directing, and producing the Show based on the real criminal acts of the Baltimore Gun Trace Task Force, Defendants were giving publicity to a matter of public concern.

44.     In writing, directing, and producing the Show to depict a real interaction between Sgt. Wayne Jenkins and Plaintiff, but altering the facts of that interaction to one in which Plaintiff was engaged in acts of prostitution, Defendants placed Plaintiff before the public in a false light.

45.     By depicting Plaintiff in a false light implying she was engaged in prostitution, Defendants invaded Plaintiff's privacy in such a way that a reasonable person in Plaintiff's position would be highly offended.

46.     In portraying Plaintiff in a false light, Defendants knew their portrayal of Plaintiff's actions were false because Plaintiff never engaged in any acts of prostitution.  Moreover, there has never been evidence to suggest that Plaintiff engaged in an act of prostitution.

47.     In portraying Plaintiff in a false light, Defendants acted in reckless disregard for the truth and with reckless disregard for Plaintiff's privacy interests.

48.     As a direct result of Defendants' conduct described herein, Plaintiff has suffered – and will continue to suffer – harm to her reputation from the position in which Defendants have placed her.

49.     As a direct result of Defendants' conduct described herein, Plaintiff has suffered -- and will continue to suffer -- emotional distress and personal humiliation.

## COUNT 3
### Negligence
### (All Defendants, Jointly and Severally)

50.     Paragraphs 1-41 are hereby incorporated into this Count as if restated here.

51.     Defendants wrote, produced, and distributed a television program based on real events.  They also advertised and promoted it as such.  In so doing, Defendants owed a duty of care to the real people upon whom the characters were based to portray the events accurately, alter the story in such a way as it would not reasonably impugn the reputation and character of the real people upon whom the characters were based, or alter the story in such a way as the real people upon whom the characters were based were not readily identifiable.

52.     Defendants violated their duty of care to Plaintiff.  Defendants failed to portray the events Plaintiff was involved in accurately.

53.     Defendants knowingly, willfully, intentionally, and negligently altered Plaintiff's story to imply that she was engaged in prostitution with Sgt. Wanyne Jenkins.

54.     Defendants failed to alter the story in such a way as it would not reasonably impugn Plaintiff's reputation and character.  Defendants did alter the story, but in a way that would make the story more entertaining and profitable with knowing, willful, intentional, and negligent disregard for Plaintiff's reputation and character.

55.     Defendants also failed to alter the story in such a way as to make Plaintiff unidentifiable as the real person upon whom the corresponding character in the Program was based.  The character in the Program was a black, female, little-person, exotic dancer, who was robbed by Sgt. Wanyne Jenkins in or around 2015.  Plaintiff is literally the only person who has ever lived who was a black, female, little-person, exotic dancer, who was robbed by Sgt. Wanye Jenkins in or around 2015.

56.     Defendants' failure to uphold their duty of care to Plaintiff directly and indirectly caused Plaintiff to suffer substantial harm.  Those harms included, but were not limited to, severe emotional stress, strained interpersonal relationships, loss of wages, loss of professional opportunities, and public obloquy.

## REQUESTED REMEDIES

For the causes of action described herein, Plaintiff respectfully requests this Honorable Court enter a judgment ordering Defendants to pay Plaintiff the following:

A.  Compensatory damages in the amount of $3,000,000.00 (three million dollars);

B.  Punitive damages in the amount of $10,000,000.00 (ten million dollars);

C.  Attorney's fees in amounts deemed appropriate by the Court;

D.  Pre and post judgement interests;

E.  Any other remedy deemed appropriate by the Court.

Date:  January 27, 2023

NATHAN M. F. CHARLES, Esq.
Attorney for the Plaintiff
Managing Partner,
**Charles Legal Services**
www.charleslegalservices.com
Maryland Attorney 2011200007
U.S. District Court for the District of
Maryland Attorney 22007
11313 Gainsborough Road,
Potomac, MD 20854
(o) 240-406-4977
(m) 717-202-9407
nate@charleslegalservices.com
WhatsApp